UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| JOSEPH DAGGS | CIVIL ACTION NO. 2:19-cv-00071 |
| VERSUS | SECTION M:<br>DISTRICT JUDGE BARRY W. ASHE |
| GULF OFFSHORE LOGISTICS, LLC, ET AL. | DIVISION 2:<br>MAGISTRATE JUDGE<br>JOSEPH C. WILKINSON, JR. |

## GOL, LLC AND REC MARINE LOGISTICS, LLC'S MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT

**NOW INTO COURT**, through undersigned counsel, come defendants, GOL, LLC and REC Marine Logistics, LLC (hereinafter sometimes collectively referred to as "Defendants"), who hereby file this Motion for Partial Summary Judgment seeking dismissal of plaintiff's claim for maintenance and cure for the reasons more fully set forth below.

I.   **FACTUAL AND PROCEDURAL BACKGROUND**

A.   Alleged Accident and Subsequent Lawsuit

Plaintiff, Joseph Daggs, was employed by REC Marine Logistics, LLC ("REC Marine") on November 30, 2018, and was working onboard the M/V BRIANA MARIE. Daggs alleges that, on that date, he sustained injury to his "neck, back, and body in general when he slipped and fell back landing on construction materials left aboard the stern deck of the [vessel]."[1] Discovery has revealed that plaintiff is claiming injury to his neck and lower back in particular.

---

[1] See Plaintiff's First Amended Complaint, Rec. Doc. 21, p. 2

Daggs initially filed suit against Gulf Offshore Logistics, LLC.[2] He subsequently amended his Original Complaint to remove Gulf Offshore Logistics and name REC Marine, GOL, LLC ("GOL"), and T&T Marine 2, LLC ("T&T") as defendants.[3] Plaintiff's First Amended Complaint alleges that REC, or alternatively GOL, was his employer. The First Amended Complaint further alleges that T&T was the owner of the BRIANA MARIE. Plaintiff asserts causes of action for Jones Act negligence, maintenance and cure, and unseaworthiness.[4]

B. Plaintiff's Post-Accident Medical Treatment

Following his alleged accident on the M/V BRIANA MARIE, plaintiff was evaluated at Occupational Medicine Services in Houma, Louisiana. Daggs reported only low back pain.[5] No mention was made of any neck injury or neck pain. Upon physical examination, the treating medical provider noted the following:

> There is no redness, no abrasions, no welts, no bruising. He is hypersensitive to very light touch to the point where he is actually guarding and defending his back. He won't allow me to actually touch him, swatting my hand away when I go to touch his back. He refuses to perform any forward flexion of the L-Spine, says he believes it will hurt too much, so he refused to do it.[6]

An x-ray of the lumbar spine was taken which was normal. An MRI taken immediately post-accident was also reviewed, whereupon the following was noted:

> [A] report from the radiologist show[s] no remarkable osteoedema, no advanced arthropathy, no disc herniations or nerve root compromise. He has a mild facet capsulitis L3-4, L5, L5-S1, which are chronic findings. There are no acute abnormalities noted and no neural compromise.[7]

---

[2] Rec. Doc. 1
[3] Rec. Doc. 21
[4] Rec. Doc. 21
[5] See report from Occupational Medicine Services dated Nov. 30, 2019, attached hereto as Exhibit "A."
[6] Exhibit A
[7] *Id.*

The treating provider noted that when he informed plaintiff of his diagnostic results the plaintiff became belligerent, stating that he didn't care what the provider had to say and that he was going to see his own doctor.[8] It was recommended that Daggs take Aleve or Advil for his complaints of pain. The treating provider noted that plaintiff was "ok to perform any activity he can tolerate doing."[9]

Plaintiff next sought treatment on December 19, 2018, approximately three weeks after the accident, with Dr. Remi Nader, a neurosurgeon in Houston, Texas. Daggs reported low back pain, as well as neck pain for the first time.[10] After examining plaintiff, Dr. Nader ordered an MRI of his cervical spine.[11] He also requested that plaintiff bring in a copy of the MRI of his lumbar spine performed on the date of the accident.[12]

On March 27, 2019, plaintiff returned to Dr. Nader with continuing complaints of low back and neck pain.[13] Dr. Nader reviewed the results of the recommended cervical MRI. He also reviewed the results of a second MRI of the lumbar spine which was apparently performed on March 5, 2019. With respect to the cervical MRI, Dr. Nader believed that it showed "broad-based disc bulges and moderate foraminal stenosis at C3-C4, C4-C5, C5-C6, and C6-C7, as well as herniated nucleus pulposus at C4-C5, C5-C6, and C6-C7.[14] As for the March 2019 lumbar MRI, he reported that such showed "broad-based disc bulges, herniated nucleus pulposus, and moderate foraminal stenosis at L4-L5 and L5-S1, as well as grade 1 retrolisthesis at L5-S1.[15] In his report

---

[8] *Id.*
[9] *Id.*
[10] See report of Dr. Remi Nader dated December 19, 2018, attached hereto as Exhibit "B."
[11] Exhibit B
[12] *Id.*
[13] See report of Dr. Remi Nader dated March 27, 2019, attached hereto as Exhibit "C."
[14] Exhibit C
[15] *Id.*

of March 27, 2019, Dr. Nader listed various diagnoses, including low back pain, radiculopathy of the lumbar region, and cervicalgia.[16]

Dr. Nader has recently recommended that plaintiff undergo lumbar fusion surgery at L4-L5 and L5-S1. Although surgery has not yet been formally recommended for plaintiff's cervical spine, Dr. Nader has indicated that such may be necessary in the future.

C. <u>Plaintiff's Prior Medical History</u>

Plaintiff has an extensive history of injury to his low back and treatment therefore. He also has a history of neck injury and treatment. In September of 2002, Daggs sustained injury to his lower back while employed by Bollinger Shipyards. Records from Bollinger Shipyards show that he was treated at Family Doctor Clinic of Mathews on September 23, 2002, for an injury to his lower back that occurred on September 20, 2002.[17] According to the initial treatment note, Daggs injured his low back while "trying to move large iron blocks."[18] He was diagnosed with an "acute lumbar strain," issued various pain medications, and restricted to sedentary work until his next appointment.[19] Plaintiff received follow-up care at Family Doctors Clinic of Mathews on October 2 and October 9, 2002, with ongoing complaints of low back pain.[20] He again followed up on November 4, 2002, at which time he was given a diagnosis of "lumbar pain with right-sided radiculopathy."[21] It was noted that Daggs should see an orthopedist for an MRI, as his low back pain had not improved.[22]

---

[16] *Id*.
[17] See records from Bollinger Shipyards, attached hereto as Exhibit "D."
[18] Exhibit D
[19] *Id*.
[20] *Id*.
[21] *Id*.
[22] *Id*.

On December 3, 2014, plaintiff was treated at St. Anne Hospital in Raceland, Louisiana for a car accident which occurred the day prior. Daggs reported neck, low back, and shoulder pain.[23] He was diagnosed with a neck muscle strain and given various prescription medications, including hydrocodone, cyclobenzaprine and ibuprofen.[24] Plaintiff was discharged with home care instructions for a "neck sprain or strain."[25]

On December 9, 2014, Daggs was involved in another car accident. The accident was serious enough that he was transported by ambulance to Our Lady of the Lake Regional Medical Center in Baton Rouge, Louisiana. He arrived at the emergency room with a cervical collar.[26] Plaintiff apparently reported low back, neck, and shoulder pain. X-rays were taken of all three areas.[27] Plaintiff was discharged from the hospital with prescription pain medication, and instructed to follow-up for further care within 3 to 5 days at the Capitol City Family Health Center.[28]

On December 18, 2014, Daggs began receiving treatment at Matherne Chiropractic as a result of the car accident on December 9, 2014. He reported complaints of left shoulder pain, low back pain, and right leg numbness down to his foot.[29] He received treatment at Matherne Chiropractic until at least August 31, 2015 for these complaints.[30] During the course of his treatment at Matherne Chiropractic, Daggs underwent a lumbar MRI on March 19, 2015, which revealed diminished disc signal and a shallow annular bulge at L5-S1.[31] He also filed a claim for short-term disability benefits through his employer at the time, Pioneer Production. In connection

---

[23] See records from St. Anne Hospital, attached hereto as Exhibit "E."
[24] Exhibit E
[25] *Id*.
[26] See records from Our Lady of the Lake Regional Medical Center, attached hereto as Exhibit "F."
[27] Exhibit F
[28] *Id*.
[29] See records from Matherne Chiropractic Family Wellness Center, attached hereto as Exhibit "G."
[30] Exhibit G
[31] See records from Diagnostic Imaging Services, attached hereto as Exhibit "H."

with that claim, Dr. Heath Matherne submitted documentation on plaintiff's behalf noting that Daggs had "low back pain and right leg numbness currently."[32] He further noted a diagnosis of "strain/sprain w/ mild disc bulge L5-S1."[33]

### D. Plaintiff's Concealment of Prior Medical History

Plaintiff applied for a job as a rigger/deckhand at REC Marine on October 30, 2018.[34] In connection with his application, REC Marine required Daggs to submit to a pre-employment physical.[35] As part of the pre-employment physical, plaintiff had to complete and sign a medical history questionnaire.[36] The questionnaire instructed Daggs to "Circle Y for YES and N for NO," with respect to whether he had ever experienced a list of various injuries and conditions.[37] Plaintiff circled N for No in response to whether he had ever "injured your back or experienced back pain" or "injured your neck or experienced neck pain."[38] He also circled N for No regarding whether he had ever "undergone an MRI…for any part of your body." Plaintiff's responses were clearly untruthful in light of his medical history. He acknowledged at his deposition that his responses were not truthful, and that he concealed his medical history because he was afraid that if he disclosed his prior history he would not be hired.[39]

The questionnaire which plaintiff was required to complete at his pre-employment physical was meant to form part of an overall assessment of whether he was physically capable of performing the strenuous work of a deckhand. Had Daggs disclosed his prior history of low back and neck injuries, REC Marine would have required further medical information, including prior

---

[32] See records from Pioneer Production Services, attached hereto as Exhibit "I."
[33] Exhibit I
[34] See plaintiff's deposition, attached hereto as Exhibit "J," p. 115
[35] Exhibit J, p. 115
[36] Exhibit J, p. 115-16; See also medical history questionnaire, attached hereto as Exhibit "K."
[37] Exhibit K
[38] Exhibit K
[39] Exhibit J, p. 116

medical records, and would have required further evidence of plaintiff's capability of performing the duties of a deckhand before a decision was made as to his employability.[40]

## II. LAW AND ARGUMENT

### A. Summary Judgment Standard

Summary Judgment should be granted if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. Proc. 56(a). If the dispositive issue is one on which the moving party will bear the burden of proof at trial, such as an affirmative defense, the moving party "must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial." *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263-64 (5th Cir. 1991).

### B. The *McCorpen* Defense Generally

What has come to be commonly known as the "*McCorpen* defense" originated from the U.S. Fifth Circuit Court of Appeals' decision in *McCorpen v. Central Gulf Steamship Corp.*, 396 F.2d 547 (5th Cir. 1968). In *McCorpen*, the U.S. Fifth Circuit held that an employer's obligation to pay maintenance and cure is eliminated if a seaman intentionally conceals or fails to disclose past illness or injury to an employer who required the seaman to submit to a pre-hiring medical examination or interview. *McCorpen*, 396 F.2d at 548-549. In order to establish a *McCorpen* defense, an employer must show that: (1) the seaman intentionally misrepresented or concealed medical facts; (2) the omitted facts were material to the employer's hiring decision; and (3) a causal connection exists between the prior injury or ailment and the present injury at issue. *McCorpen* at 548-549; see also *Brown v. Parker Drilling Offshore Corp.*, 410 F.3d 166, 171 (5th Cir. 2005).

---

[40] See Unsworn Declaration of Blaine Russell, attached hereto as Exhibit "L."

C. Application of Three-Pronged *McCorpen* Defense

1. Intentional Concealment

"The intentional concealment element does not require a finding of subjective intent." *Brown v. Parker Drilling Offshore Corp.*, 410 F.3d 166, 174 (5th Cir. 2005). *McCorpen's* intentional concealment prong is an objective inquiry that "neither turns on credibility nor requires subjective determination." *McNabb v. Bertucci Contracting Co.*, 2013 WL 1099156 (citing *Brown,* 410 F.3d at 175). "Failure to disclose medical information in an interview or questionnaire that is obviously designed to elicit such information…satisfies the intentional concealment requirement." *Brown*, at 174. The questionnaire attached as Exhibit K was clearly designed to elicit information concerning any prior back or neck injuries, as well as any prior instances of neck or back pain. Despite this, plaintiff failed to disclose his prior history of neck and back injuries and the treatment he had received relative thereto. He further acknowledged under oath that his responses on the medical history questionnaire were not truthful.[41] Accordingly, the intentional concealment prong of *McCorpen* is satisfied.

2. Materiality

As for the materiality prong of the *McCorpen* defense, the "fact that an employer asks a specific medical question on an application, and that inquiry is rationally related to the applicant's physical ability to perform his job duties renders the information material." *Brown* at 175. As set forth in the Declaration of Blaine Russell, the operations manager at REC Marine, the job duties of a deckhand include, but are not limited to, the following:

---

[41] Exhibit J, p. 116

a. Assisting with the transfer of personnel to and from offshore facilities by various means, including swing rope and personnel basket

b. Lifting, carrying and handling heavy equipment, including face wires, shore lines, ratchets, etc.;

c. Rigging up heavy cargo for transfer to and from offshore platforms;

d. Maneuvering cargo on the deck of a vessel in various sea conditions;

e. Climbing and/or descending ladders and/or stairs to access various areas of a vessel;

f. Transferring between vessels;

g. Performing routine maintenance and minor vessel repairs;

h. Lifting and carrying objects weighing between 50 and 100 pounds; and

i. Repetitive bending, stooping and other strenuous activities

The questions asked on the pre-employment medical questionnaire completed by plaintiff are clearly "rationally related" to whether plaintiff had the physical ability to perform the unquestionably strenuous work of a deckhand. See *Smith v. Diamond Services Corp.*, 133 F.Supp.3d 846, 850 (E.D. La. 2015)(finding materiality element satisfied and noting that questions about prior neck and back injuries "would certainly be relevant to [an individual's] ability to perform the duties of a deckhand."). Furthermore, REC Marine has provided the Declaration of its operations manager attesting to the fact that the questionnaire was meant to form part of an overall assessment of whether Daggs was physically capable of performing the work of a deckhand, and that had plaintiff disclosed his prior history of low back and neck injuries (and treatment therefore), REC Marine "would have required further medical information…including prior medical records, and would have required further evidence of [plaintiff's] capability of performing the duties of a deckhand without injury to himself

or others before a decision was made as to his employability."[42] For the foregoing reasons, the materiality prong is satisfied.

3. Causality

The applicable jurisprudence illustrates that the causality prong of *McCorpen* is not an exacting standard. "There is no requirement that a present injury be identical to a previous injury. All that is required is a causal link between the pre-existing disability that was concealed and the disability incurred during the voyage." *Brown*, 410 F.3d at 176. Courts have held that if the medical condition concealed and the one complained of are to the same part of the body, the causality element is satisfied. *See Keys v. Halliburton Co.*, 1989 WL 54224, *3 (E.D. La. 1989).

In *Lett v. Omega Protein, Inc.*, the plaintiff received medical treatment for "severe neck pain" for which he was prescribed medication approximately 2 months before his pre-employment physical. *Lett v. Omega Protein, Inc.*, 487 Fed. Appx. 839 (5th Cir. 2012). Causality was found where the injury asserted in the lawsuit was likewise to plaintiff's neck. *Lett* at 848-49. *Wimberly v. Harvey Gulf Int'l Marine, LLC* involved a plaintiff who alleged a current injury of "moderate degenerative disc disease and spondylosis at the L4-5 and L5-S1 levels with central annular tear at both levels…[and] chronic-appearing moderate T12 compression fracture." *Wimberly v. Harvey Gulf Int'l Marine, LLC,* 126 F. Supp. 3d 725, 734-35 (E.D. La. 2015). Prior to the injury sued upon, the plaintiff's history of back problems consisted of "lower back pain," "back pain," 'back sprain," "lower back sprain," and a diagnosis of an "L1 vertebral body wedge compression fracture of unknown age." *Wimberly* at 734. In finding that causality was established, the court held that "[w]hile the compression fracture and the reports of back strains are not 'identical' to Wimberly's current disc injury, the location of his past issues of pain and injuries coincide [with] the previous injuries to the lower back area." *Id.* at 734-35. Similarly, in *Brown v. Parker Offshore Drilling Corp.*, the U.S. Fifth

---
[42] Exhibit L

Circuit held that causality existed where the plaintiff's prior injury was a lumbar strain which sent him to the emergency room and the present injury was a herniated disc in the lumbar region of the spine. *Brown*, 410 F.3d at 176-77. See also *Chapman v. Spartan Offshore Drilling, LLC*, 2016 WL 1393490, at *5 (E.D. La. 2016)("The link between prior and present injuries does not necessarily need to occur to the exact same vertebrae or tissue but rather in the same location on the body."); *Kathryn Rae Towing, Inc. v. Buras*, 2013 WL 85210, at *7 (E.D. La.)(finding a causal link on summary judgment where previous diagnoses and the precise lumbar vertebrae injured were not identical but employee's complaints to doctors were quite similar); *Weatherford v. Nabors Offshore Corp.*, 2004 WL 414948, at *3 (E.D. La. 2003)(finding a causal link on summary judgment where plaintiff concealed prior injury to lower back and instant injury claim included pain in the lower back); *Boatright v. Raymond Dugat Company, L.C.*, 2009 WL 138464 (S.D. Tx. 2009)(causality element satisfied where the plaintiff's current and prior injuries were both to his right hip).

Daggs has a long history of prior low back injuries. As noted above, he was involved in a work-related accident in September of 2002 where he was initially diagnosed with an acute lumbar strain. He received ongoing medical treatment through October and November of 2002. On November 4, 2002, he was diagnosed with "lumbar pain with right sided radiculopathy."[43] Daggs was then involved in two separate car accidents in December of 2014 for which he received medical treatment for neck and low back pain.[44] Regarding the car accident on December 3, 2014, plaintiff was diagnosed with a neck strain and prescribed medication.[45] He also sustained injury to his neck in the car accident of December 9, 2014, and was brought to the hospital in an ambulance

---

[43] Exhibit D
[44] Exhibits E and F
[45] Exhibit E

with a cervical collar.[46] Following the second car accident plaintiff received chiropractic treatment for over 8 months with complaints of low back pain and right leg numbness.[47] He underwent an MRI which revealed diminished disc signal and an annular bulge at L5-S1.[48] Moreover, Daggs filed a claim for short-term disability benefits citing a diagnosis of "strain/sprain w/ mild disc bulge at L5-S1."[49] Plaintiff's prior injuries and those complained of in this case are to the same part of his body. Under the applicable jurisprudence there is clearly a sufficient causal relationship between those prior injuries and those alleged herein. As such, the causality prong of *McCorpen* is satisfied.

### III. CONCLUSION

For the reasons sets forth herein, REC Marine avers that plaintiff is not entitled to maintenance and cure for his alleged injuries. Accordingly, REC Marine respectfully requests that this Honorable Court grant this Motion for Partial Summary Judgment, and dismiss plaintiff's claim for maintenance and cure, with prejudice.

---

[46] Exhibit F
[47] Exhibit G
[48] Exhibit H
[49] Exhibit I

Respectfully submitted,

***/s/ Kyle A. Khoury***
Salvador J. Pusateri, T.A. (#21036)
Kyle A. Khoury (#33216)
**PUSATERI, JOHNSTON, GUILLOT & GREENBAUM**
1100 Poydras Street, Suite 2250
New Orleans, LA 70163
Telephone: (504) 620-2500
Facsimile: (504) 620-2510
salvador.pusateri@pjgglaw.com
kyle.khoury@pjgglaw.com
**ATTORNEYS FOR REC MARINE LOGISTICS, LLC AND GOL, LLC**