UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| JOSEPH DAGGS | CIVIL ACTION |
| VERSUS | NO. 19-00071 |
| GULF OFFSHORE LOGISTICS, LLC | SECTION M (2) |

### ORDER & REASONS

Before the Court is a motion by REC Marine Logistics, LLC ("REC") and Gulf Offshore Logistics, LLC ("GOL") (collectively, "Defendants")[1] for partial summary judgment on plaintiff Joseph Daggs's maintenance and cure claim, to which Daggs responds in opposition,[2] and in further support of which Defendants reply.[3] Having considered the parties' memoranda, the record, and the applicable law, the Court grants Defendants' motion because Defendants have successfully proven all three prongs of the *McCorpen* defense.

### I.  BACKGROUND

This case arises out of injuries Daggs allegedly sustained while employed as a seaman aboard the *M/V Briana Marie*, a vessel owned by T&T Marine 2, LLC, and operated by GOL and/or REC.[4] On October 30, 2018, Daggs applied for the position of rigger/deckhand with REC and filled out REC's preemployment medical questionnaire as part of the application process.[5] The questionnaire instructs applicants to "Circle Y for YES and N for NO if you currently have

---

[1] R. Doc. 31.
[2] R. Doc. 36.
[3] R. Doc. 41. Also before the Court is a motion by Daggs for preliminary injunction (R. Doc. 30) seeking to force Defendants to pay maintenance and cure to Daggs, to which Defendants respond in opposition (R. Doc. 32), and in further support of which Daggs replies (R. Doc. 38). Because the Court concludes that Defendants are entitled to summary judgment dismissing Daggs's maintenance and cure claim, Daggs's motion for preliminary injunction is DENIED as moot.
[4] R. Doc. 21 at 2.
[5] R. Docs. 31-11 at 2; 31-12 at 1.

the following symptoms or have significantly in the past."[6] Daggs circled "N for NO" for every symptom and condition listed on the questionnaire, including: "Injured your back or experienced back pain" and "Injured your neck or experienced neck pain."[7] However, Daggs had prior back and neck injuries: (1) on September 20, 2002, Daggs injured his lumbar region while working for Bollinger Shipyards;[8] (2) on December 3, 2014, Daggs injured his neck and lower back in a car accident;[9] and (3) on December 9, 2014, Daggs was injured in a second car accident and his cervical spine and lumbar spine were x-rayed.[10] Also, Daggs began seeking treatment for lower back pain on December 18, 2014.[11] Further, on May 7, 2015, Daggs filed a claim for short-term disability benefits where his doctor indicated Daggs was experiencing lower back pain.[12]

On or about November 30, 2018, while employed by REC, Daggs was allegedly injured aboard the *Briana Marie* when he slipped and fell while traversing the aft deck and landed on construction materials left on the stern deck.[13] Daggs alleges that he "sustained injuries to his neck, back, and body in general" as a result of the accident.[14] Daggs asserts claims against Defendants for Jones Act negligence, unseaworthiness, and maintenance and cure, including attorney's fees and punitive damages associated with Defendants' allegedly willful, arbitrary, and capricious failure to pay maintenance and cure.[15]

---

[6] R. Docs. 31-11 at 2; 31-12 at 1.
[7] R. Doc. 31-12 at 1. On the questionnaire, Daggs also denied ever having an MRI, having asthma, being a patient in a hospital, injuring his right or left shoulder, injuring his right or left leg, being limited by a physician in the amount of weight he could lift, and having an injury that required him to miss time from work. *Compare id. with* R. Docs. 31-5 at 2, 5-6; 31-6 at 1-2; 31-7 at 2, 8, 11; 31-8 at 2, 7-8, 12; 31-9 at 2-3; 31-10 at 3. Each of these answers was untruthful.
[8] R. Doc. 31-5.
[9] R. Doc. 31-6.
[10] R. Doc. 31-7 at 2-3, 5-7, 11.
[11] R. Doc. 31-8 at 2.
[12] R. Doc. 31-10 at 2-3.
[13] R. Doc. 21 at 2.
[14] *Id.*
[15] *Id.* at 2-4.

## II. PENDING MOTION

Asserting the *McCorpen* defense, Defendants seek dismissal of Daggs's claim for maintenance and cure.[16] Defendants argue that Daggs is not entitled to maintenance and cure for his alleged injuries because he failed to disclose his prior history of neck and back injuries on REC's preemployment questionnaire, the questionnaire was material to REC's decision to hire Daggs, and there is a causal connection between his prior and current injuries.[17]

Daggs responds that summary judgment is not appropriate because Defendants have not "conclusively established" the three prongs of the *McCorpen* defense.[18] Daggs argues that his prior injuries were not significant and he had no current injuries at the time he completed the questionnaire, so his answers to the questionnaire did not constitute intentional concealment; that the questionnaire was only a small part of the hiring process and he passed a physical examination; and that Defendants made a "conclusory assertion" that Daggs's prior and current injuries are to the same part of his body.[19]

## III. LAW & ANALYSIS

### A. Summary Judgment Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)). "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial." *Id*. A party moving for summary judgment bears the initial burden of demonstrating the basis for summary judgment

---

[16] R. Doc. 31-1 at 1.
[17] *Id.* at 7-12.
[18] R. Doc. 36 at 2.
[19] *Id.* at 3-5, 7.

3

and identifying those portions of the record, discovery, and any affidavits supporting the conclusion that there is no genuine issue of material fact. *Id*. at 323. If the moving party meets that burden, then the nonmoving party must use evidence cognizable under Rule 56 to demonstrate the existence of a genuine issue of material fact. *Id*. at 324.

A genuine issue of material fact exists if a reasonable jury could return a verdict for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1996). The substantive law identifies which facts are material. *Id.* Material facts are not genuinely disputed when a rational trier of fact could not find for the nonmoving party upon a review of the record taken as a whole. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Equal Emp't Opportunity Comm'n v. Simbaki, Ltd.*, 767 F.3d 475, 481 (5th Cir. 2014). "[U]nsubstantiated assertions," "conclusory allegations," and merely colorable factual bases are insufficient to defeat a motion for summary judgment. *See Anderson*, 477 U.S. at 249-50; *Hopper v. Frank*, 16 F.3d 92, 97 (5th Cir. 1994). In ruling on a summary judgment motion, a court may not resolve credibility issues or weigh evidence. *See Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008). Furthermore, a court must assess the evidence, review the facts, and draw any appropriate inferences based on the evidence in the light most favorable to the party opposing summary judgment. *See Tolan v. Cotton*, 572 U.S. 650, 656 (2014); *Daniels v. City of Arlington*, 246 F.3d 500, 502 (5th Cir. 2001). Yet, a court only draws reasonable inferences in favor of the nonmovant "when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

After the movant demonstrates the absence of a genuine dispute, the nonmovant must articulate specific facts and point to supporting, competent evidence that may be presented in a form admissible at trial. *See Lynch Props., Inc. v. Potomac Ins. Co. of Ill.*, 140 F.3d 622, 625 (5th Cir. 1998); Fed. R. Civ. P. 56(c)(1)(A) & (c)(2). Such facts must create more than "some

metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. When the nonmovant will bear the burden of proof at trial on the dispositive issue, the moving party may simply point to insufficient admissible evidence to establish an essential element of the nonmovant's claim in order to satisfy its summary judgment burden. *See Celotex*, 477 U.S. at 322-25; Fed. R. Civ. P. 56(c)(B). Unless there is a genuine issue for trial that could support a judgment in favor of the nonmovant, summary judgment must be granted. *See Little*, 37 F.3d at 1075-76.

**B. Maintenance & Cure**

"Maintenance and cure is a contractual form of compensation afforded by the general maritime law to seamen who fall ill or are injured while in the service of a vessel." *Meche v. Doucet*, 777 F.3d 237, 244 (5th Cir. 2015) (quoting *Jauch v. Nautical Servs., Inc.*, 470 F.3d 207, 212 (5th Cir. 2006)). "Generally, an employer 'must pay maintenance and cure to any seaman who becomes ill or suffers an injury while in the service of the vessel, regardless of whether either party was negligent.'" *Johnson v. Cenac Towing, Inc.*, 544 F.3d 296, 301 (5th Cir. 2008) (quoting *Bertram v. Freeport McMoran, Inc.*, 35 F.3d 1008, 1012 (5th Cir. 1994)). Maintenance entitles a seaman to a daily living allowance for food and lodging. *See In re 4-K Marine, L.L.C.,* 914 F.3d 934, 937 (5th Cir. 2019); *Hall v. Noble Drilling*, 242 F.3d 582, 586 (5th Cir. 2001). Cure entitles a seaman to necessary medical services. *See Guevara v. Maritime Overseas Corp.*, 59 F.3d 1496, 1499 (5th Cir. 1995).

When an employer receives a demand for maintenance, it is not required to immediately begin payments, but rather it may conduct a reasonable investigation of the claim and require corroboration without subjecting itself to compensatory or punitive damages. *Boudreaux v. Transocean Deepwater, Inc.*, 721 F.3d 723, 728 (5th Cir. 2013); *Brown v. Parker Drilling Offshore Corp.*, 410 F.3d 166, 171 (5th Cir. 2005); *Morales v. Garijak, Inc.*, 829 F.2d 1355, 1358 (5th Cir. 1987). In addition, an employer "is allowed to rely on certain legal defenses to deny a claim for maintenance and cure." *Cenac Towing*, 544 F.3d at 301 (citing *Brown*, 410 F.3d at 171). One of

these defenses was articulated by the Fifth Circuit in *McCorpen v. Central Gulf Steamship Corp.*, 396 F.2d 547 (5th Cir. 1968). To establish the *McCorpen* defense, an employer must show that (1) the seaman intentionally misrepresented or concealed medical facts; (2) the non-disclosed facts were material to the employer's decision to hire the seaman; and (3) a causal connection exists between the withheld information and the injury complained of in the lawsuit. *Brown*, 410 F.3d at 171 (citing *McCorpen*, 396 F.2d at 548-49).

### 1. Intentional Concealment

The first prong of *McCorpen* is satisfied "where the shipowner requires a seaman to submit to a pre-hiring medical examination or interview and the seaman intentionally misrepresents or conceals material medical facts, the disclosure of which is plainly desired." *McCorpen*, 396 F.2d at 549; *see Wimberly v. Harvey Gulf Int'l Marine, LLC*, 126 F. Supp. 3d 725, 732 (E.D. La. 2015) ("Failure to truthfully answer medical questions or expound upon a condition when requested by the employer in a medical questionnaire test can forfeit a seaman's right to maintenance and cure."). The "intentional concealment prong of *McCorpen* is an essentially objective inquiry" which "neither necessarily turns on credibility nor requires a subjective determination." *Brown*, 410 F.3d at 174-75.

Defendants argue that the first prong of *McCorpen* is met because Daggs failed to disclose his prior history of back and neck injuries and associated treatment.[20] Defendants assert that REC's preemployment medical questionnaire "was clearly designed to elicit information concerning" any previous back or neck injuries or pain.[21] Defendants add that Daggs "acknowledged under oath that his responses on the medical history questionnaire were not truthful."[22]

Daggs argues that the first prong is not met because REC's pre-employment questionnaire stated "Circle Y for YES and N for NO if you **currently** have the following symptoms *or* **have**

---

[20] R. Doc. 31-1 at 8.
[21] *Id.*
[22] *Id.*

**significantly in the past**," and Defendants have not provided evidence Daggs was experiencing back or neck injuries "at the time that he completed the questionnaire."[23] According to Daggs, by using the word "significantly," Defendants "left it up to [Daggs] to determine if he subjectively believed that he had *significantly* experienced in the past any of the injuries asked about."[24] Thus, Daggs contends that the questionnaire required an affirmative response only if he had "*current* or previous *significant* episodes of neck or back pain," rather than any prior back or neck pain or injuries.[25]

Daggs's self-serving explanation made in opposition to the motion for partial summary judgment is belied by his deposition testimony wherein he admitted that he lied on REC's preemployment medical questionnaire because he wanted to get a job.[26] Courts have held that the intentional concealment prong is clearly met where a plaintiff falsely answers a preemployment questionnaire.[27] For example, in *Wheeler v. Transocean Offshore, USA, Inc.*, 2017 WL 4402433, at *3 (E.D. La. Oct. 2, 2017), the plaintiff argued that "he subjectively believed he did not have any significant past medical history because he was not experiencing any ailments on the day of the exam." The court rejected this argument, holding that intentional concealment was met because the plaintiff failed to disclose the requested medical information. *Id.*

Daggs's argument that REC's use of the word "significantly" changes the nature of the inquiry is also without merit. As explained by the Fifth Circuit in *Brown*, the intentional concealment prong "is an essentially objective inquiry," 410 F.3d at 174-75, and courts have

---

[23] R. Doc. 36 at 2-3 (citing R. Doc. 31-11 at 3) (emphasis in original).
[24] *Id.* at 3 (emphasis in original).
[25] *Id.* at 3-4 (emphasis in original).
[26] R. Doc. 31-11 at 3.
[27] *See, e.g., Alliance Marine Servs., LP v. Youman*, 2018 WL 6523134, at *6 (E.D. La. Dec. 12, 2018) (plaintiff admitted in deposition that he gave false answers in response to questions about prior back problems on preemployment questionnaire); *Chapman v. Spartan Offshore Drilling, LLC*, 2016 WL 1393490, at *4 (E.D. La. Apr. 8, 2016) (plaintiff "admitted lying on the entrance exam and in response to direct questions"); *Boatright v. Raymond Dugat Co.*, 2009 WL 138464, at *3 (S.D. Tex. Jan. 20, 2009) (plaintiff failed to disclose prior injury on employment questionnaire); *Weatherford v. Nabors Offshore Corp.*, 2004 WL 414948, at *2 (E.D. La. Mar. 4, 2004) ("By his own admission, plaintiff intentionally concealed multiple injuries from [the employer] in hopes of improving his chances of being hired.").

continued to treat this inquiry as "essentially objective" even where employers use the exact language contained in REC's preemployment questionnaire.[28] In *Owens v. Abdon Callais Offshore, LLC*, 2011 WL 3654239, at *10 (E.D. La. Aug. 19, 2011), the preemployment questionnaire instructed the plaintiff to "Circle Y for YES and N for NO if you currently have the following symptoms or have significantly in the past." Like Daggs, the *Owens* plaintiff, who circled "N" for "Injured back/back pain," argued that "he did not intend to deceive" his employer because "he did not consider his earlier back pain to have been 'significant.'" *Id.* The court rejected this argument, noting that "the Fifth Circuit has been clear that the intentional concealment prong is an objective test." *Id.* (citing *Brown*, 410 F.3d at 174). It is undisputed that Daggs gave false answers regarding his history of back and neck injuries and pain. Accordingly, this Court finds that the intentional concealment prong is established.

### 2. Materiality

Under the second prong of *McCorpen*, "[t]he fact that an employer asks a specific medical question on an application, and that the inquiry is rationally related to the applicant's physical ability to perform his job duties, renders the information material for the purpose of this analysis." *Brown*, 410 F.3d at 175. A seaman's "history of back injuries is the exact type of information sought by employers." *Id.*

Defendants argue that the second prong is satisfied because the questions Daggs answered on the preemployment medical questionnaire "are clearly 'rationally related' to whether [Daggs]

---

[28] *See, e.g., Ladnier v. REC Marine Logistics, LLC*, 2015 WL 3824382, at *3 (E.D. La. June 19, 2015) (intentional concealment met where plaintiff failed to disclose information in response to preemployment questionnaire that instructed "circle Y for YES and N for NO if the applicant currently has any of the symptoms listed or has significantly experienced the symptoms in the past"); *Hardison v. Abdon Callais Offshore, LLC*, 2012 WL 2878636, at *4-5 (E.D. La. July 13, 2012) (intentional concealment met where plaintiff knowingly submitted incorrect information and preemployment questionnaire instructed "circle Y for Yes and N for No if he currently had the symptoms listed on the form or if he had those symptoms significantly in the past") (internal quotation marks omitted), *aff'd*, 551 F. App'x 235 (5th Cir. 2013); *Billiot v. Cheramie Marine, LLC*, 2010 WL 4702946, at *2 (E.D. La. Nov. 10, 2010) (intentional concealment met where preemployment questionnaire asked whether plaintiff "currently ha[s] the following symptoms or ha[d] significantly in the past" and plaintiff answered no to all even though he injured his back in a car accident nine years prior).

8

had the physical ability to perform the unquestionably strenuous work of a deckhand."[29] Defendants also assert that the unsworn declaration of its operations manager, Blaine Russell,[30] shows that the questionnaire formed "part of an overall assessment" of Daggs's capacity to perform the work, and that if Daggs had disclosed his history of prior injuries, REC "would have required further medical information" and "further evidence of [Daggs's] capability of performing the duties" required of a deckhand.[31]

Daggs argues that the second prong is not met because Defendants "did not solely rely on the questionnaire" in the decision to hire Daggs, but rather, REC tested his physical ability to work as a deckhand before hiring him.[32] Therefore, Daggs says, REC's preemployment questionnaire "was only one small part of the overall hiring process," since he passed REC's preemployment physical and training, was ultimately hired, and worked on a different vessel for a week and a half before his transfer to and subsequent injury on the *Briana Marie*.[33] Daggs also argues that because Defendants have not shown REC "would have refused to hire [Daggs]" had he disclosed his prior injuries, this "suggests that [Daggs] may well have been hired even if [he] *had* disclosed previous back and/or neck injuries."[34]

Daggs's argument that his non-disclosed medical information was immaterial to REC's employment decision is off the mark. First, Daggs's history of prior injuries was clearly "rationally related" because REC's preemployment medical questionnaire asked specific medical questions

---

[29] R. Doc. 31-1 at 9.
[30] Daggs objects to the use of Russell's unsworn declaration as summary judgment evidence. R. Doc. 36 at 6. "In federal court, unsworn declarations may substitute for an affiant's oath if the statement contained therein is made 'under penalty of perjury' and verified as 'true and correct.'" *Wilkerson v. Loupe Constr. & Consulting Co.*, 2011 WL 4947604, at *5 n.26 (E.D. La. Oct. 18, 2011) (citing 28 U.S.C. § 1746; *Martin v. John W. Stone Oil Distrib., Inc.*, 819 F.2d 547, 549 (5th Cir. 1987)). In his unsworn declaration, Russell declares that "[t]his declaration is made upon personal knowledge of the matters set forth herein" and further declares "under penalty of perjury, that the foregoing [declaration] is true and correct." R. Doc. 31-13 at 1, 3. Courts have relied upon similar declarations when analyzing the materiality prong of *McCorpen*. *See Wimberly*, 126 F. Supp. 3d at 733; *Youman*, 2018 WL 6523134, at *7; *Ladnier*, 2015 WL 3824382, at *5. Because Russell's unsworn declaration complies with 28 U.S.C. § 1746, the Court will consider it for purposes of this motion.
[31] R. Doc. 31-1 at 9-10 (citing R. Doc. 31-13).
[32] R. Doc. 36 at 4.
[33] *Id.* at 4-5.
[34] *Id.* at 6 (emphasis in original).

and the job of a REC deckhand involves physical labor.[35] In *Wimberly v. Harvey Gulf*, materiality was "clearly established" where the defendant "asked a specific medical question about applicants' history of injury to the back and neck, which, as reflected in declarations from [the employer], is directly related to the duties required of a deckhand." 126 F. Supp. 3d at 733. REC's preemployment questionnaire asked specific medical questions about Daggs's medical history, and the statements in Russell's unsworn declaration evidence that these questions were directly related to a deckhand's job duties, which involve physical labor.[36]

Second, REC would have required Daggs to undergo further medical evaluation had he disclosed his prior medical history. Courts have granted summary judgment on the materiality prong "when the evidence establishes that full disclosure of the plaintiff's medical condition would have prompted his employer to conduct further medical evaluation prior to making a hiring decision." *White v. Sea Horse Marine, Inc.*, 2018 WL 3756475, at *3 (E.D. La. Aug. 8, 2018).[37] Russell's statements in his declaration establish that, had Daggs disclosed his prior injuries on

---

[35] *See Ladnier*, 2015 WL 3824382, at *5 (materiality met where employer's inquiries were "rationally related to Plaintiff's physical ability to perform his job duties" because the employer "specifically asked questions on the pre-employment questionnaire" regarding certain injuries and it was undisputed the job duties "involve[d] physical labor"); *see also Smith v. Diamond Servs. Corp.*, 133 F. Supp. 3d 846, 850 (E.D. La. 2015) ("Defendant asked Plaintiff about his prior neck and back injuries prior to hiring him, and those injuries would certainly be relevant to his ability to perform the duties of a deckhand.").

[36] R. Docs. 31-12 at 1; *see* Russell's declaration: "The medical history questionnaire which a potential employee is required to complete forms a part of an overall assessment of whether the potential employee is physically capable of performing the work of a deckhand." (R. Doc. 31-13 at 2); "Given the physical nature of the work of a deckhand, REC Marine requires applicants to disclose (through a pre-employment medical history questionnaire) any prior injury or disease to a wide range of body parts that would be utilized in the work of a deckhand, including, but not limited to, the neck and back." *Id.* at 3. The duties of a deckhand include: assisting with personnel transfer; lifting, carrying, and handling heavy equipment; rigging up heavy cargo; maneuvering cargo on deck; climbing and/or descending ladders and/or stairs; transferring between vessels; performing routine maintenance and minor vessel repairs; lifting and carrying objects weighing between 50 and 100 pounds; and repetitive bending, stooping, and other strenuous activities. *Id.*

[37] *See Wimberly*, 126 F. Supp. 3d at 733 (according to employer's unsworn declarations, the employer "would have further inquired about his medical history before hiring [plaintiff] if he had disclosed more information about his back and neck problems"); *Ladnier*, 2015 WL 3824382, at *5 (employer's operations manager declared that "had Plaintiff fully disclosed his medical history," the employer "would have required further medical information from [him], including prior medical records, and would have required further evidence of [his] capability of performing the duties of a vessel captain before a decision was made as to his employability").

REC's preemployment questionnaire, REC would have required further medical information from Daggs.[38] Russell's statements on this point are unrebutted.

Contrary to Daggs's assertions, Defendants did not and need not "solely rely" on the preemployment questionnaire to satisfy the materiality prong.[39] Instead, Defendants may also rely on the information concerning Daggs's medical history that he should have disclosed. Indeed, Daggs's argument that his non-disclosed medical history was immaterial because he passed REC's physical examination and worked for a period without incident fails. In *Brown*, the Fifth Circuit rejected the plaintiff's argument that "materiality did not exist because he worked the first few months of his job without incident." *Wimberly*, 126 F. Supp. 3d at 733 (citing *Brown*, 410 F.3d at 175). And in *Wimberly*, the court held it "irrelevant" that the plaintiff "passed a physical capability test" and worked one year without incident "because similar to the defendant in *Brown*, [the employer] based its hiring decision in part upon whether the applicants experienced prior back and neck trouble, not their ability to 'on the date of their application, complete difficult manual labor tasks.'" 126 F. Supp. 3d at 733 (citing *Brown*, 410 F.3d at 175).[40]

Daggs's argument that his non-disclosed medical history was immaterial because Defendants did not show he would not have been hired had he disclosed his prior injuries also fails. Daggs has the burden of proof: under the second prong of *McCorpen*, "if an employee can show that, even if undisclosed facts were material, he or she would have been hired regardless, the

---

[38] R. Doc. 31-13 at 3.

[39] *See, e.g., Wimberly*, 126 F. Supp. 3d at 733 (employer "based its hiring decision *in part* upon whether applicants experienced prior back and neck trouble") (emphasis added); *Wheeler*, 2017 WL 4402433, at *4 (employer "based its hiring decision (*at least, in part*) upon whether the applicant had significant previous medical issues, not solely on whether the applicant could complete difficult manual labor tasks at the time of hiring") (emphasis added); *Owens*, 2011 WL 3654239, at *10 (employer "based its hiring decision, *at least indirectly*" on plaintiff's misrepresentations about his medical history) (emphasis added).

[40] *See, e.g., Wheeler*, 2017 WL 4402433, at *4 (noting that it is irrelevant whether plaintiff passed physical tests because this argument was discredited by the Fifth Circuit in *Brown*); *Chapman*, 2016 WL 1393490, at *5 (noting that *Brown* "rejected the argument that a plaintiff's successful passing of an employer's physical exam factors in to a *McCorpen* materiality analysis"); *Boatright*, 2009 WL 138464, at *4 (explaining that whether the job "includes physically strenuous activity" and whether plaintiff "was performing these duties successfully" prior to his current injury is "irrelevant to the Court's analysis of whether the existence of his [previous] injury" should be factored into the "employer's determination of whether he is physically able to perform his job duties") (citing *Brown*, 410 F.3d at 175).

employer is not entitled to the *McCorpen* defense." *Hare v. Graham Gulf, Inc.*, 22 F. Supp. 3d 648, 654 (E.D. La. 2014) (citing *McCorpen*, 396 F.2d at 551-52); *see Ladnier*, 2015 WL 3824382, at *5 (plaintiff "ha[d] not come forward with any evidence to show that he would have been hired even if he had fully disclosed his shoulder conditions").[41] Daggs has not come forward with any evidence to show he would have been hired regardless, and Russell's statements in his unsworn declaration evidence that Daggs's undisclosed medical history, had it been revealed, would have been an important factor in REC's hiring decision.[42]

It is clear that Daggs's prior injuries constituted information that would have been material to Defendants' decision to hire him. REC asked specific questions on its preemployment medical questionnaire that related to past and current back and neck injuries, and it is undisputed that the duties of a REC deckhand involve physical labor. Thus, REC's inquiries are rationally related to Daggs's physical ability to perform his job duties. Additionally, REC's operations manager, Russell, declared that had Daggs "disclosed his prior history of low back and neck injuries ... REC Marine would have required further medical information from Daggs ... and ... further evidence of his capability of performing the duties of a deckhand ... before a decision was made as to his employability."[43] Further, Daggs has presented no evidence to show he would have been hired by REC even if he *had* fully disclosed his prior injuries. Accordingly, this Court finds that Defendants have met the required showing of materiality to satisfy the second *McCorpen* prong.

### 3. Causal Connection

"[E]ven an intentional misrepresentation of medical facts which would have been material to the employer's hiring decision is insufficient to overcome an obligation of maintenance and

---

[41] R. Doc. 36 at 5-6. Daggs himself apparently recognizes this rule, citing *Dennis v. ESS Support Servs. Worldwide*, 2016 WL 689999, at *4 (E.D. La. July 12, 2016) (emphasis added), which states: "If, however, a *plaintiff* shows he would have been hired regardless of whether the concealment was material, the employer loses on the second prong."

[42] R. Doc. 31-13 at 4; ("Had REC Marine been made aware of Joseph Daggs' history of low back and neck injuries (and treatment therefor[]) such would have been important to REC Marine in considering whether to hire him as a deckhand.").

[43] *Id.* at 3-4.

12

cure, barring a connection between the withheld information and the injury which is eventually sustained." *Brown*, 410 F.3d at 175 (citation and internal quotations omitted). Under the third prong of *McCorpen*, though, the employer "need not prove that the prior injuries are the sole causes of the [current injury]"; rather, the employer "need only show a *causal relationship* between the prior injuries and the [current injury]." *Id.* at 176 (emphasis in original). "The inquiry is simply whether the new injury is related to the old injury, irrespective of their root causes." *Johnson*, 599 F. Supp. 2d at 728-29 (citing *Brown*, 410 F.3d at 175-76). Thus, the employer "need not submit any proof that the plaintiff's omission caused the injury." *Id.* at 728. "Rather, the *McCorpen* defense will succeed if the defendant can prove that the old injury and the new injury affected the same body part." *Id.* (citing *Brown*, 410 F.3d at 176). "There is no requirement that a present injury be identical to a previous injury." *Brown*, 410 F.3d at 176 (citation and internal quotations omitted); *see Chapman*, 2016 WL 1393490, at *5 ("The link between prior and present injuries does not necessarily need to occur to the exact same vertebrae or tissue but rather in the same location of the body.") (citing *Brown*, 410 F.3d at 176-77).

Defendants argue that the third prong of *McCorpen* is met because "there is clearly a sufficient causal relationship" between Daggs's previous and current injuries, citing to Daggs's "long history of prior low back injuries," other back issues, neck issues, and asserting that his previous and current injuries "are to the same part of his body."[44]

Daggs argues that the third prong is not met because Defendants "simply listed" his previous injuries to make a "conclusory assertion" that his prior and current injuries are to the same part of his body.[45] Daggs asserts that because Defendants have "fallen woefully short" of their burden to compare evidence of Daggs's past injuries to the injuries he sustained aboard the

---

[44] R. Doc. 31-1 at 11-12.
[45] R. Doc. 36 at 7.

*Briana Marie*, they have failed to "establish conclusively a causal connection" between any of Daggs's previous and current injuries.[46]

An examination of Daggs's prior injuries demonstrates that they bear a sufficient causal relationship to those at issue in this case. On September 20, 2002, Daggs was injured while working for Bollinger Shipyards, reported pain in his lumbar region, and was diagnosed with an "acute lumbar strain."[47] On October 2 and 9, 2002, Daggs sought further medical treatment relating to his lumbar strain.[48] Daggs was diagnosed with "lumbar pain with right-sided radiculopathy" on November 4, 2002, and sought further medical treatment on November 11, 2002.[49]

On December 3, 2014, Daggs was involved in a car accident, and he sought treatment for his injuries the following day at an emergency department.[50] Daggs complained of "pain and stiffness of his neck and lower back" which had been "gradually worsening" since his accident and was diagnosed with a "neck muscle strain."[51] On December 9, 2014, Daggs was involved in a second car accident and transported to a medical center in an EMS unit "with C collar LSB,"[52] had his left shoulder, cervical spine, and lumbar spine x-rayed, and was prescribed medication.[53] On December 18, 2014, Daggs began medical treatment at a chiropractic center for pain in his back, left shoulder, and leg, which he said started with his December 9, 2014 accident, and

---

[46] *Id.* at 7, 10. Daggs also argues that Defendants "attempt to make two simultaneous, mutually exclusive assertions" by alleging "on the one hand that [Daggs] was not injured at all as a result of the incident made the basis of this suit, but simultaneously alleging on the other hand that [Daggs] *was* injured as a result of said incident, and that those injuries are causally connected to injuries that [Daggs] had sustained previously." *Id.* (emphasis in original). The Court is not aware of, nor has it been cited to, any authority that would preclude such alternative pleading in regard to claims for maintenance and cure and a *McCorpen* defense.
[47] R. Doc. 31-5 at 2-4.
[48] *Id.* at 5-6, 8.
[49] *Id.* at 9-10.
[50] R. Doc. 31-6 at 1.
[51] *Id.* at 2, 7-9.
[52] R. Doc. 31-7 at 2. A method for immobilizing patients with suspected spinal injuries, including those affecting the cervical spine, "C collar LSB" refers to a long spine board with a cervical collar. *See* U.S. National Library of Medicine, National Institutes of Health, *Comparing the Efficacy of Methods for Immobilizing the Cervical Spine*, ncbi.nlm.nih.gov/pubmed/29916958 (last visited Oct. 29, 2019).
[53] R. Doc. 31-7 at 2-3, 5-7, 11-12.

indicated he was experiencing lower back problems.[54] One of his major complaints was described as "LBP (10)," or lower back pain, and Daggs noted his symptoms had worsened since the accident.[55]

A March 19, 2015 MRI of Daggs's lumbar spine indicated "a mild diminished disc signal at L5-S1 with shallow annular bulge."[56] On May 7, 2015, Daggs filed a claim for short-term disability benefits through his then-employer Pioneer Production Service, Inc., which was denied.[57] On the claim form, Daggs's treating physician indicated that Daggs was, at the time, experiencing low back pain, right leg numbness, and a "strain/sprain with mild disc bulge at L5/S1."[58]

On the day of the November 30, 2018 accident that is the subject of this case, Daggs received medical treatment and his "chief complaint" was of "lower back pain."[59] The treating physician noted that Daggs's x-ray looked normal, and his MRI showed "chronic findings" of "mild facet capsulitis at L3-4, L-5, L5-S1."[60] On December 19, 2018, Daggs sought medical treatment for lower back and neck pain which he described as beginning after his November 30, 2018 injury.[61] The treating physician recommended physical therapy for Daggs's cervical and lumbar spine.[62] On March 27, 2019, Daggs returned to this physician, complaining of neck and lower back pain.[63] According to the physician, a March 5, 2019 MRI of Daggs's lumbar spine "reveal[ed] broad-based disc bulges, herniated nucleus pulposus, and moderate foraminal stenosis at L4-L5 and L5-S1, as well as grade 1 retrolisthesis at L5-S1."[64] He also reported that a December 19, 2018 MRI of Daggs's cervical spine "reveal[ed] broad-based disc bulges and moderate

---

[54] R. Doc. 31-8 at 2-3.
[55] *Id.* at 7-8, 12.
[56] R. Doc. 31-9 at 2-3.
[57] R. Doc. 31-10 at 2.
[58] *Id.* at 3.
[59] R. Doc. 31-2 at 2.
[60] *Id.* at 2-3.
[61] R. Doc. 31-3 at 2.
[62] *Id.* at 3.
[63] R. Doc. 31-4 at 2.
[64] *Id.*

15

foraminal stenosis at C3-C4, C4-C5, C5-C6 and C6-C7, as well as herniated nucleus pulposus C4-C5, C5-C6 and C6-C7, and straightening of normal lordotic curvature."[65] Daggs was diagnosed with a plethora of conditions.[66] The physician recommended physical therapy for, and a facet injection of, Daggs's cervical spine, and physical therapy for, and an epidural steroid injection of, his lumbar spine, and noted that "[w]ithin a reasonable degree of medical probability, [Daggs] will likely need a L4-L5 and L5-S1 ALIS [*i.e.*, anterior lumbar interbody fusion surgery], as well as a C4-C5, C5-C6 and C6-C7 ACDF [*i.e.*, anterior cervical discectomy fusion surgery], if conservative treatment fails."[67]

Defendants, contrary to Daggs's assertions, have successfully shown that Daggs's previous and current injuries are to the exact same parts of his body. Courts in this Circuit readily find causal connection met where the plaintiff's past and present injuries are to the same area of the body.[68] For example, in *Chapman*, 2016 WL 1393490, at *6 (citing *Brown*, 410 F.3d at 176-77), the court held that the employer established that the plaintiff's present back injury was related to his history of back pain because it was "clear that the injuries [a]ffected that same location on the body – the lower back generally, and the L4-5 level of the spine specifically."

Daggs argues that "simply showing that the previous injury affected the same body part as the current injury does not suffice."[69] However, this is only true if the defendant's evidence fails to identify the specific region of the body affected by the past and current injuries. For example,

---

[65] *Id.*

[66] These conditions included spinal stenosis, lumbar region with neurogenic claudication; other intervertebral disc displacement, lumbar region; radiculopathy, lumbar region; low back pain; cervical disc disorder with myelopathy, unspecified cervical region; spinal stenosis, cervical region; radiculopathy, cervical region; other cervical disc displacement, unspecified cervical region; and cervicalgia. *Id.* at 2-3.

[67] *Id.* at 3.

[68] *See, e.g., Wheeler*, 2017 WL 4402433, at *4 (prior and current injuries both involved neck pain and left shoulder); *Ladnier*, 2015 WL 3824382, at *6 (prior and current injuries both involved right shoulder); *Wilkerson*, 2011 WL 4947604, at *4 (prior and current injuries both involved back and neck); *Owens*, 2011 WL 3654239, at *11 (prior and current injuries both involved same portion of back and leg); *Weatherford*, 2004 WL 414948, at *3 (prior and current injuries both involved lower back pain); *Keys v. Halliburton Co.*, 1989 WL 54224, at *4 (E.D. La. May 17, 1989) (prior and current injuries affected the lower back).

[69] R. Doc. 36 at 6 (citing *Jackson v. NCL America, LLC*, 730 F. App'x 786, 790 (11th Cir. 2018) ("Although the two injuries do not have to be identical, *Brown*, 410 F.3d at 176, simply showing that [plaintiff's] previous pain and her injury from the fall affect the same body part *without more specificity* does not suffice, *see id.* at 176-77.") (emphasis added)).

in *Billiot v. Cheramie Marine,* the court held that the causal connection prong of *McCorpen* was not met because the defendant did not present "*any* medical evidence regarding the similarities of the injuries and whether the injuries are connected." 2010 WL 4702946, at *3 (emphasis added). In contrast, here, Defendants supplied evidence in the form of supporting medical documentation to establish which of Daggs's prior injuries are similar to the injuries he allegedly sustained in the November 30, 2018 accident.[70] Thus, Defendants provided the requisite degree of specificity.

Daggs suffered from an "acute lumbar strain"[71] and "lumbar pain"[72] in 2002, "pain and stiffness in his neck and lower back"[73] and "neck muscle strain"[74] in 2014, and "lower back pain"[75] with a "strain/sprain with mild disc bulge at L5/S1"[76] in 2015. Daggs currently alleges damages for "injuries to his neck, back, and body in general."[77] On the date of his November 30, 2018 accident, Daggs complained of "lower back pain," and later complained of both lower back and neck pain; and treatment was recommended for both his cervical and lumbar spine.[78] The December 2018 and March 2019 MRIs reveal injuries in the L5-S1 region for which a physician recommended treatment or surgery. Thus, examining the specific medical references to Daggs's prior and current injuries against his lay terminology for these injuries in pleading, Defendants have plainly established with a sufficient level of specificity that these injuries affected the same parts of his body – namely, his lower back and neck. Accordingly, this Court finds that Defendants have made the required showing of causal connection to satisfy the third prong of the *McCorpen* defense.

---

[70] R. Docs. 31-1 at 2-6, 11-12; 31-2, 31-3, 31-4, 31-5, 31-6, 31-7, 31-8, 31-9, 31-10.
[71] R. Doc. 31-5 at 2-4.
[72] *Id.* at 9-10.
[73] R. Doc. 31-6 at 1.
[74] *Id.* at 2.
[75] R. Doc. 31-10 at 3.
[76] *Id.* at 3.
[77] R. Doc. 21 at 2.
[78] R. Docs. 31-2; 31-3; 31-4.

In sum, because Defendants have established all three elements of the *McCorpen* defense, this Court holds that Defendants are entitled to the defense and Daggs is barred from recovery of maintenance and cure.

## IV. CONCLUSION

Accordingly, for the foregoing reasons,

IT IS ORDERED that Daggs's motion for preliminary injunction to compel payment of maintenance and cure (R. Doc. 30) is DENIED.

IT IS FURTHER ORDERED that the Defendants' motion for partial summary judgment on Daggs's claim for maintenance and cure (R. Doc. 31) is GRANTED, and Daggs's claim for maintenance and cure is DISMISSED WITH PREJUDICE.

New Orleans, Louisiana, this 4th day of November, 2019.

_____
BARRY W. ASHE
UNITED STATES DISTRICT JUDGE