UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JOSEPH DAGGS** | **CIVIL ACTION NO.  2:19-cv-00071** |
| **VERSUS** | **SECTION M:**<br>**DISTRICT JUDGE BARRY W. ASHE** |
| **GULF OFFSHORE LOGISTICS, LLC, ET AL.** | **DIVISION 2:**<br>**MAGISTRATE JUDGE DONNA PHILLIPS CURRAULT** |

### REPLY MEMORANDUM IN SUPPORT OF MOTION FOR LEAVE TO SUPPLEMENT JOINT PRE-TRIAL ORDER

MAY IT PLEASE THE COURT:

GOL, LLC, REC Marine Logistics, LLC, and T&T Marine 2, LLC (hereinafter sometimes collectively referred to as "defendants") hereby file this brief reply memorandum in support of their Motion for Leave to Supplement Joint Pre-Trial Order. As the Court is aware, defendants seek to add two exhibits to the Joint Pre-Trial Order which reflect Facebook posts/comments made by plaintiff after the original Joint Pre-Trial Order was filed.

In his Opposition Memorandum, plaintiff argues that defendants have not provided a sufficient explanation for their failure to include the Facebook posts/comments in the original Joint Pre-Trial Order. More particularly, Daggs notes that the posts were made nearly fifteen months ago and were set to public rather than private. A crucial detail left out by Daggs is that the posts were not made under a Facebook profile using his given name, but rather under an alias—"Chubb Daggs." Even if the posts and comments had been made using a Facebook profile under plaintiff's real name, the fact is that they were made on November 20, 2019, and the Joint Pre-Trial Order was filed six days earlier on November 13, 2019. This evidence simply could not have been

included in the Joint Pre-Trial Order because it did not exist at the time. Plaintiff also complains that the defendants waited until the "eve of trial" to add this evidence to the Pre-Trial Order. This case was previously set for trial on March 15, 2021. Defendants filed their Motion on January 14, 2021. Defendants respectfully submit that more than two months is hardly the "eve of trial." In any event, as discussed further below, trial of this case has been continued due to COVID-19. At present no trial date is set. A Scheduling Conference with the Court's case manager will take place on March 3, 2021 for purposes of selecting a new trial date. (Rec Doc. 92).

Regarding the second factor under *Geiserman v. MacDonald*, plaintiff claims the posts/comments are not relevant to any issue in the case, and therefore are not important. As explained in defendants' Motion, the comments are relevant to plaintiff's credibility. Daggs testified during his deposition that he had no source of income, relies on loans from a legal finance company, and receives Medicaid. (Rec. Doc. 91-1, pg. 4). This is inconsistent with his Facebook comments that he "has a lot of money," and has overseas money with Columbia products." (Rec. Doc. 91-2). Daggs asserts that responses to his comments made by an individual named Justin Williams indicates that Williams did not take the plaintiff's comments seriously. If it is plaintiff's contention that his comments were meant as jokes, he can simply explain that to the jury. Defendants submit that it is within the province of the jury to decide whether Daggs was joking.

Plaintiff's comments also call into question his motivations for this lawsuit. After referencing that he has a lot of money, Daggs states the following "Justin Williams fall back off my live video before Santa clause [sic] pass by u." (Rec. Doc. 91-2). Following the above-referenced comment, an individual named Cheryl Daggs, who appears to be plaintiff's sister, commented "Problem bro?" to which plaintiff replied "Cheryl Daggs I don't have none of them. Only problems is trying to figure out how will I bless you, momma, my brother, nieces and

nephews, and my kids. Everything is irrelevant." (Rec. Doc. 91-2). The timing (one day after mediation and 19 days before the original trial date), as well as the content of the comments strongly imply that should Daggs receive an award, either through settlement or trial, he intends to give away money to friends and family. If this implication is accurate, such could reasonably lead a jury to question whether the damages plaintiff seeks to recover are attributable to bonafide losses sustained in the alleged accident. Damages are meant to compensate an injured person, not to enrich their family and friends. Plaintiff responds that the comment to Cheryl Daggs is taken out of context because it "makes no reference to mediation, trial, settlement, litigation, or anything related to the present suit." (Rec. Doc. 93, pg. 3). While the Facebook comment itself may not provide the entire context, the context is provided by the very circumstances of this case. A private mediation was held on November 19, 2019, with trial quickly approaching. (Rec. Doc. 91-1, pg. 1). The above-referenced comment was made the next day. According to plaintiff, mediation was "spectacularly unsuccessful" because he believed the offers made by defendants were only a fraction of his provable damages. He therefore reasons that he could not have believed he would get wealthy from this case and be able to spread that wealth around to his family and friends. Defendants submit that the conclusion to be drawn from the failed mediation is quite the opposite. As with most failed mediations, the one which took place on November 19, 2019 did not result in settlement because plaintiff believed his case was worth more than was being offered by the defendants, and that he would fare better at trial which was only 19 days away.

The third and fourth factors to be considered by the Court are the prejudice in allowing the Facebook evidence to be admitted at this time, and the availability of a continuance to cure any such prejudice. With respect to these factors, Daggs argues he would be prejudiced by the proposed evidence because it is not relevant, and therefore any probative value would be outweighed by the

risk of unfair prejudice (apparently referencing the balancing test envisioned by Federal Rule of Evidence 403). He goes on to state that "a continuance would not cure the aforementioned prejudice because the prejudice is substantive, not merely procedural." (Rec. Doc. 93, pg. 5). With all due respect, the "prejudice" discussed in *Geiserman v. MacDonald* and related cases precisely refers to procedural prejudice rather than substantive prejudice. The relevant inquiry is whether allowing defendants to add an exhibit to the Joint Pre-Trial Order later than the original Scheduling Order required will prejudice plaintiff by not giving him enough time to fairly meet that evidence at trial. Daggs is simply conflating the unfair prejudice inquiry under Fed. R. Evid. 403 with the prejudice inquiry envisioned by *Geiserman.* When properly viewed, it is clear plaintiff will not suffer any procedural prejudice. At the time defendants filed their Motion for Leave to supplement the Joint Pre-Trial Order, trial was more than two months away. Subsequent to the filing of that Motion, the Chief District Judge for the Eastern District of Louisiana issued COVID-19 General Order No. 21-1, which extended all jury trial until at least May 1, 2021. This Honorable Court subsequently issued its own Order confirming that trial was continued, and that a Scheduling Conference would be held on March 3, 2021 for purposes of selecting a new trial date. (Rec. Doc. 92). It appears unlikely that trial will be re-scheduled precisely on May 1, 2021. However, even such was the case, plaintiff would still be afforded three and a half months from the time defendants' Motion was filed to prepare his response to the proposed evidence. Thus, while defendants aver that plaintiff would not suffer any prejudice in the first instance, as the evidence sought to be admitted are his own statements which he is free to explain to the jury, any such prejudice is easily cured by the built-in continuance resulting from COVID-19.

Although plaintiff frames the third and fourth inquiries improperly, defendants will nevertheless address his claim of substantive prejudice. Federal Rule of Evidence 403 states that

"The Court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Daggs argues that because the Facebook evidence has no probative value, it would be an irrelevant distraction and would confuse the jury. As discussed at length above, the evidence is probative both of plaintiff's credibility, as well as his motivations for this lawsuit. Furthermore, it seems unlikely that the limited amount of evidence sought to be admitted could distract the jury or confuse them in any way. Plaintiff further argues that "allowing Defendants to attribute the Facebook posts of 'Chubb Daggs' and other Facebook users to Plaintiff Joseph Daggs given that they contain the n-word and grammar errors would likely cause the jury to form harmful racial stereotypes to Plaintiff and stereotypes about Plaintiff's intelligence." (Rec. Doc. 93, pg. 5). Defendants acknowledged in their Motion that one of the comments by Justin Williams, a "friend" of plaintiff, uses a racially derogatory term. Not wishing to repeat the word, defendants replaced it with asterisks. In reviewing the exchange between plaintiff and Mr. Williams, it is clear that the word can be redacted without the exchange losing any context. Should the Court grant defendants' Motion, defendants will redact the word prior to preparation of the joint bench book.

    Defendants do wish to address one implication repeatedly made in plaintiff's Opposition Memorandum. Throughout the Opposition, plaintiff places quotation marks around "Chubb Daggs," seeming to imply that the Facebook comments/posts come from a profile which is not his own. The Facebook profile contains numerous pictures of the plaintiff and family members. Undersigned counsel personally attended the deposition of Daggs, and can confidently say that the person depicted throughout the Facebook profile is the same individual who purports to be the plaintiff in this case. Furthermore, if the Facebook profile was somehow created by someone

posing as the plaintiff, that person certainly has access to a significant amount of pictures of Mr. Daggs and his family. Such person would also have to have known that the plaintiff, who resides in Thibodaux, Louisiana, posted a "check-in" to the office of his registered counsel of record in Beaumont, Texas on the day after mediation. Nevertheless, defendants intend to lay a foundation for the authenticity of the posts at trial by asking plaintiff whether the posts came from a Facebook profile which he maintains, and whether he has a relative named Cheryl Daggs. Of course, if plaintiff contends that someone has created a fake Facebook profile and that he did not make the comments therein, he is free to explain his contention to the jury.

Plaintiff's last argument is that the evidence at issue contains numerous hearsay statements, including those of Justin Williams and Cheryl Daggs. Daggs claims "defendants have identified no exception to the hearsay rule that would permit those comments to be admitted to the jury." (Rec. Doc. 93, pg. 5). Federal Rule of Evidence 801 defines hearsay as a statement that: "(1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c). The defendants are not submitting any statements by Justin Williams or Cheryl Daggs to prove the truth of any matter asserted in such statements. Rather, it is the plaintiff's own statements which defendants seek to admit to prove the truth of the matter asserted therein (as well as any conclusions to be drawn from those statements). Plaintiff's own comments are admissible under Federal Rule of Evidence 801(d)(2)(A) which provides that a statement is not hearsay if the statement is offered against an opposing party and "was made by the party in an individual or representative capacity."

For all of the foregoing reasons, as well as the reasons set forth in their Motion, defendants respectfully request that this Honorable Court grant them leave to supplement the Joint Pre-Trial Order with the above-referenced Facebook evidence.

Respectfully submitted:

*/s/   Kyle A. Khoury*
Kyle A. Khoury, T.A. (#33216)
Salvador J. Pusateri (#21036)
Meredith W. Blanque (#32346)
**PUSATERI, JOHNSTON, GUILLOT & GREENBAUM**
1100 Poydras Street, Suite 2250
New Orleans, LA 70163
Telephone: (504) 620-2500
Facsimile: (504) 620-2510
kyle.khoury@pjgglaw.com
salvador.pusateri@pjgglaw.com
meredith.blanque@pjgglaw.com
**ATTORNEYS FOR REC MARINE LOGISTICS, LLC, GOL, LLC, AND T&T MARINE 2, LLC**